| ACCOUNT INFORMATION | | ACCT. # | | ⬤7449 | |
|---|---|---|---|---|---|
| CURRENT PAYOFF: | $239,577.04 | AS OF: | 9/15/2009 | AMOUNT IN PRINCIPAL: | $234,637.43 |
| INTEREST RATE: | 7.0000% | PER DIEM: | $45.4204 | AMOUNT IN INTEREST: | $1,157.82 |
| NEXT PAYMENT (S) DUE: | 10/5/2009 | AMOUNT: | $1,748.26 | AMOUNT IN LATE FEES: | $262.23 |
| | | | | PREPAYMENT PENALTY | $3,519.56 |
| ARREARAGE: | $0.00 | AS OF: | 9/15/2009 | COLLATERAL | 52 E Mulberry St Lebanon, OH |
| PRINCIPAL: | $0.00 | LATE FEES: | $0.00 | | |
| INTEREST: | $0.00 | ESCROW: | $0.00 | | |

| | | LO/LP CMB/DLG |
|---|---|---|
| MITCHELL W. ALLEN; YASMEEN ALLEN<br>466 COLUMBUS AVENUE<br>LEBANON, OH 45036 | NATIONAL BANK & TRUST CO<br>48 N. SOUTH ST.<br>WILMINGTON, OH 45177 | Loan Number ____7449<br>Date 10-05-2006<br>Maturity Date 10-05-2031<br>Loan Amount $ 243,750.00<br>Renewal Of _____<br>BRANCH # 1 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of TWO HUNDRED FORTY THREE THOUSAND
SEVEN HUNDRED FIFTY AND NO/100 _____ Dollars $ 243,750.00

☒ **Single Advance:** I will receive all of this principal sum on 10-05-2006 _____ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
   I will receive the amount of $ _____ and future principal advances are contemplated.
   **Conditions:** The conditions for future advances are _____

   ☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
      all other conditions and expires on _____

   ☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 10-05-2006 _____ at the rate of 7.910 % per year
until 10-04-2011 _____

☒ **Variable Rate:** This rate may then change as stated below.
   ☒ **Index Rate:** The future rate will be 3.250 PERCENT ABOVE _____ the following index rate: THE WEEKLY AVERAGE YIELD ON UNITED STATES
      TREASURY SECURITIES ADJUSTED TO A CONSTANT MATURITY OF FIVE YEARS.

   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☒ **Frequency and Timing:** The rate on this note may change as often as EVERY 60TH MONTH BEGINNING 10-04-2011 _____ .
      A change in the interest rate will take effect 45 DAYS AFTER THE CHANGE IN THE INDEX _____ .
   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will be not more than _____ % or less than
      _____ %. The rate may not change more than _____ % each _____ .
   **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   ☒ The amount of each scheduled payment will change.          ☐ The amount of the final payment will change.
   ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 10 _____ days after it is due, I agree to pay a late charge of 5.000% OF THE LATE AMOUNT
   WITH A MIN OF $20.00 _____

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount
   above: DOC FEE $1218.75 MTG RECORDING $84 FLOOD CERT $12 APPRAISAL FEE $2000 TITLE EXAM $ 350 _____ .

**PAYMENTS:** I agree to pay this note as follows:
300 MONTHLY PAYMENTS OF $1,885.44 BEGINNING 11-05-2006. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE AFTER THE 60TH PAYMENT AND
EVERY 60TH PAYMENT THEREAFTER.

**ADDITIONAL TERMS:**
THE PRINCIPAL PAYMENT MAY NOT BE PREPAID IN WHOLE OR IN PART EXCEPT UPON PAYMENT OF A PREPAYMENT FEE CALCULATED AS FOLLOWS: 2% OF THE AMOUNT OF
ANY PREPAYMENT FOR LOAN YEARS 1 AND 2; 1 1/2 % OF THE AMOUNT OF ANY PREPAYMENT FOR LOAN YEARS 3 AND 4; 1% OF THE AMOUNT OF ANY PREPAYMENT FOR LOAN
YEAR 5. NO PREPAYMENT FEE SHALL BE PAYABLE AFTER YEAR 5.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING
THOSE ON PAGE 2). I have received a copy on today's date.**

| ☒ **SECURITY:** This note is separately secured by (describe separate<br>document by type and date): AN OPEN END MORTGAGE DATED OCTOBER 5, 2006.<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the<br>agreement will not secure this note.) | **IN THIS NOTICE "YOU" MEANS THE BORROWER.**<br><br>**WARNING: BY SIGNING THIS PAPER YOU GIVE UP<br>YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU<br>DO NOT PAY ON TIME A COURT JUDGMENT MAY BE<br>TAKEN AGAINST YOU WITHOUT YOUR PRIOR<br>KNOWLEDGE AND THE POWERS OF A COURT CAN BE<br>USED TO COLLECT FROM YOU REGARDLESS OF ANY<br>CLAIMS YOU MAY HAVE AGAINST THE CREDITOR<br>WHETHER FOR RETURNED GOODS, FAULTY GOODS,<br>FAILURE ON HIS PART TO COMPLY WITH THE<br>AGREEMENT, OR ANY OTHER CAUSE.** |
|---|---|

**PURPOSE:** The purpose of this loan is REFINANCE COMMERCIAL PROPERTY _____

Signature for Lender

_Chad M. B_
CHAD M BEAM, AVP

_[signature]_
MITCHELL W ALLEN

_[signature]_
YASMEEN ALLEN

**EXHIBIT**
_A_
tabbies®

UNIVERSAL NOTE
Experé ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-OH 3/7/2002

**DEFINITIONS:** As used on page 1, "⊔" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Ohio will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advance at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, then repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

**CONFESSION OF JUDGMENT:** In addition to your remedies listed herein, I authorize any attorney to appear in a court of record and confess judgment, without process, against me, in favor of you, for any sum unpaid and due on this note, together with costs of suit.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experi™ ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-OH 3/7/2002

## AMENDMENT OF NOTE

**THIS AMENDMENT OF NOTE** (this "**Amendment**") is entered into by **Mitchell W. and Yasmeen Allen** (collectively, "**Borrower**") and **THE NATIONAL BANK AND TRUST COMPANY**, a national bank ("**Bank**"), effective as of **March 5, 2009** (the "**Effective Date**").

### Preliminary Statements

**A.**     This Amendment is made to modify the promissory note made by Borrower to the order of Bank dated as of **October 5, 2006** in the original principal amount of **$243,750.00** (the "**Note**").

**B.**     Borrower and Bank desire to amend the Note.

### Statement of Agreement

In consideration of the mutual covenants and agreements set forth in this Amendment, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Bank and Borrower hereby agree as follows:

**1.**     **Amendment to Note**.  The interest rate in effect under the Note immediately prior to the Effective Date was **7.91%**.  Effective as of the Effective Date, the interest rate under the Note will be amended to be **7.00%** (the "**New Rate**").  The New Rate shall be in effect until **October 4, 2011**, at which time the interest rate will adjust in accordance with the terms of the Note.  The amortization payment in effect under the Note immediately prior to the Effective Date was **$ 1,885.44** per month, due on the **5th** of each month.  After the Effective Date, the amortization payment under the Note will be **$ 1,748.26** per month, due on the **5th** of each month, commencing on **April 5, 2009** (the "**New Payment**").  The New Payment shall be in effect until **October 4, 2011**, at which time the amortization payment will adjust in accordance with the terms of the Note.

**2.**     **Ratification**.  Except as amended by the terms of this Amendment, all of the provisions of the Note are hereby ratified, confirmed and remain in full force and effect.

**3.**     **One Instrument; References; Fax Signature**.  The Note, as amended by the provisions of this Amendment, will be construed as one instrument.  Borrower and Bank agree that any reference to the Note will be treated being as a reference to the Note, as amended by this Amendment.  This Amendment may be signed by facsimile signatures or other electronic delivery of an image file reflecting the execution hereof, and if so signed, (i) may be relied on by each party as if the document were a manually signed original and (ii) will be binding on each party for all purposes; provided that Borrower will promptly deliver to Bank an original of this Amendment.

4.     **Warrant of Attorney**.  Borrower authorizes any attorney at law, including an attorney engaged by Bank, to appear in any court of record in the State of Ohio or any other State or Territory of the United States, after the Indebtedness evidenced by the Note, or any part thereof, becomes due and waive the issuance and service of process and confess judgment against Borrower and all indorsers in favor of Bank, for the amount then appearing due, together with costs of suit and, thereupon, to release all errors and waive all rights of appeal and stay of execution, but no such judgment or judgments against Borrower shall be a bar to a subsequent judgment or judgments against any one or more than one of such persons against whom judgment has not been obtained hereon.  The foregoing warrant of attorney shall survive any judgment; and if any judgment be vacated for any reason, Bank nevertheless may hereafter use the foregoing warrant of attorney to obtain an additional judgment or judgments against Borrower and all indorsers or any one or more of them.  Borrower hereby expressly waives any conflict of interest that Bank's attorney may have in confessing such judgment against such parties and expressly consent to the confessing attorney receiving a legal fee from the holder for confessing such judgment against such parties.

**IN WITNESS WHEREOF**, Borrowers have entered into this Amendment effective as of the Effective Date.

**WARNING - BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

_____
Mitchell W. Allen

_____
Yasmeen Allen

National Bank & Trust Co.

By: _____
Chad Beam, Vice President

2

**THIS OPEN-END MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING** (this "Mortgage") is made and granted this **5th DAY OF OCTOBER 2006, by MITCHELL W. ALLEN AND YASMEEN ALLEN, HUSBAND AND WIFE** having a mailing address at: **466 COLUMBUS AVENUE LEBANON, OHIO 45036** ("Borrower," whether one or more than one), to **THE NATIONAL BANK & TRUST COMPANY**, a National Bank having an office at 48 North South Street, Wilmington, Ohio 45177 ("Lender").

Lender is making a loan to Borrower in the principal amount of **TWO HUNDRED FORTY THREE THOUSAND SEVEN HUNDRED FIFTY DOLLARS AND 00/100 ($ 243,750.00)** (The "Loan is evidenced by a Note (the "Note") of even date hereof.  This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by a Promissory Note, with interest, and all renewals, extensions and modifications;  (b) the payment of all other sums, with interest, advanced to protect the security of this Security Instrument and the Note.  For this purpose, Mortgagor does hereby mortgage, grant, and convey to Lender, its successors and assigns, all of Borrower's present and future estate, right, title and interest in and to the following described property located in
**WARREN COUNTY, STATE OF OHIO.**

**52 E. MULBERRY STREET LEBANON, OHIO  45036**

Collectively, the "Property") which is more particularly: (a) the land described in Exhibit "A" which is attached hereto and made a part hereof by this reference (the "Land"); (b) all buildings and improvements now or hereafter located on the Land (the "Improvements"); (c) all fixtures, construction materials, furniture, furnishings, machinery, equipment and other property of any kind now or hereafter owned by Borrower and affixed to or located in, on or about the Land or Improvements, together with all replacements, replacement parts, additions, repairs, repair parts, accessions and accessories incorporated in any of the foregoing or affixed to any of the foregoing and the substitutions for and proceeds (including insurance proceeds payable by reason of loss or damage thereto) of any of the foregoing; (d) all appurtenances of the Land and all rights of Borrower in and to any streets, roads, public places, easements and rights of way relating to the Land; (e) all of the rents, issues and profits of the Land and Improvements, and all rights of Borrower under all present and future leases affecting the Land and Improvements; and (f) all proceeds and claims arising on account of any damage to or taking of the Land or Improvements or any part thereof, and all causes of action and recoveries for any loss or diminution in the value of the Land or Improvements.

This Mortgage secures, in such order of priority as Lender may elect, payment, performance and observance of the indebtedness and obligations of Borrower under the Loan and under each and every instrument and document now or hereafter evidencing or securing the Loan (collectively, the "Loan Documents"), including, without limitation, the Note and this Mortgage.

Borrower and Lender intend that this Mortgage secure unpaid balances of loan advances made after this Mortgage is filed for record.  Such loan advances (together with advances made on or before the date hereof) are and will be evidenced by the Note.  The total amount of the indebtedness that may be secured by this Mortgage may increase or decrease from time to time, but the total unpaid balance secured at any time by this Mortgage will not exceed a maximum principal amount of **TWO HUNDRED FORTY THREE THOUSAND SEVEN HUNDRED FIFTY DOLLARS AND 00/100 ($ 243,750.00)** plus interest thereon in accordance with the Note, and any disbursements made by Lender for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property, with interest on such disbursements.

In addition to any other debt or obligation secured hereby, this Mortgage will also secure unpaid balances of advances made with respect to the Property for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

**EXHIBIT**

tabbies

_B_

Borrower hereby covenants and agrees as follows:

1. **Performance of Obligations**.  Borrower will duly and punctually pay, perform and observe all of the indebtedness and obligations of Borrower under the Loan Documents.

2. **Title Covenants**.  Borrower is lawfully seized of the Land and Improvements and is and will be the owner of all of the Property, and the Property is and will be free and clear of all encumbrances whatsoever, except real property taxes and installments of assessments not due and payable and easements, covenants, conditions and restrictions of record which do not unreasonably interfere with the use of the Property for its intended purpose.  Borrower will forever warrant and defend the Property unto Lender, its successors and assigns, against the lawful claims of all persons and entities, except as provided in this paragraph.

3. **Impositions**.  Borrower will pay all taxes, assessments and other public charges levied or assessed against or payable in respect of the Property (collectively, the "Impositions") as the same become due and payable, and before any interest or penalty for non-payment attaches.  At the request of Lender made from time to time, Borrower will furnish Lender with evidence of payment of the Impositions.

4. **Insurance**.  Borrower will keep and maintain in force with respect to the Property policies of fire and extended coverage insurance, public liability insurance and such other insurance as Lender may from time to time reasonably require, all issued by an insurance company satisfactory to Lender.  The fire and extended coverage insurance will cover the full replacement cost of the Improvements, without coinsurance, and will contain a standard, non-contributory mortgagee endorsement in favor of Lender and such other endorsements as Lender may require.  The public liability insurance policy will name Lender as an additional insured party, with minimum limits reasonably satisfactory to Lender.  All insurance policies will provide for written notice to Lender at least thirty (30) days prior to any cancellation, modification or lapse.  Upon the issuance of each policy, Borrower will forthwith deliver the policy to Lender.  Borrower will also deliver to Lender receipts for premiums paid for replacement or renewal of each policy not less than thirty (30 days prior to the expiration of the policy.

5. **Casualty**.  If any part of the Property is damaged or destroyed by fire, windstorm or any other casualty, then Borrower will give immediate notice thereof to Lender, and Lender may thereupon make proof of such damage or destruction; provided that the right of Lender to make proof of such damage or destruction will not relieve Borrower of the obligation to make timely proof of such damage or destruction.  All proceeds of insurance payable by reason of any such damage or destruction will be payable to Lender, and all affected insurance companies are hereby authorized and directed to make payment directly to Lender.  Borrower will not settle, adjust or compromise any claims for damage or destruction under any policy of insurance without the prior written approval of Lender, and Lender may, at its option, participate in any negotiations regarding any such settlement, adjustment or com-promise.  Lender will apply the proceeds of insurance paid to it pursuant to this paragraph in accordance with the provisions of paragraph 7.  Lender will not be deemed a trustee with respect to any funds received by Lender pursuant to this paragraph, and Lender may commingle such funds with its general funds and will not be obligated to pay interest thereon.

6. **Condemnation**.  If any part of the Property is altered, damaged, taken or acquired, either temporarily or permanently, in any condemnation proceeding, or by exercise of the power of eminent domain, or by any acquisition made under threat of the exercise of the power of eminent domain, or by the alteration of the grade of any street affecting the Property (collectively, a "Taking"), the amount of any award or other payment made in consideration thereof is hereby assigned to Lender, which is empowered to collect and receive the same and

to give proper receipts therefore in the name of Borrower, and
the same will be paid forthwith to Lender.  Any award or
payment so received by Lender will be applied by Lender in
accordance with the provisions of paragraph 7.  If Borrower
receives notice, written or unwritten, of any actual, intended
or threatened Taking, Borrower will forthwith furnish a copy
of such notice to Lender if such notice was written, or inform
Lender in writing of such notice if such notice was unwritten.
 Lender will have the right, but not the obligation, to
participate in any proceedings and negotiations in connection
with any Taking or threatened Taking, and Borrower will not
compromise or settle the same without the prior written
approval of Lender.  Lender will not be deemed a trustee with
respect to any funds received by Lender pursuant to this para-
graph, and Lender may commingle such funds with its general
funds and will not be obligated to pay interest thereon.

7. **Application of Proceeds.**  Lender may apply the proceeds of
insurance paid to Lender pursuant to paragraph 5 and the
amount of any award or payment received by Lender pursuant to
paragraph 6 first, to the payment of all of Lender's costs and
expenses incurred in obtaining such proceeds (including,
without limitation, legal fees and disbursements), and may, in
its absolute discretion and without regard to the adequacy of
its security, apply the balance, in whole or in part, in such
order and priority as Lender may determine, (a) to the
reduction of the indebtedness secured by this Mortgage, or (b)
to or for the benefit of Borrower, subject to disbursement
control procedures prescribed by Lender, for the alteration,
restoration, repair, replacement or rebuilding of any part of
the Property which may have been altered, damaged or destroyed
as a result of the casualty or Taking.

8. **Condition of Property.**  Borrower will maintain and keep the
Property in good condition and repair and will not commit or
suffer any waste of the Property or take any actions which
might invalidate any policy of insurance in respect of the
Property.  Borrower will cause the Property to comply with all
statutes, ordinances, regulations and other requirements of
any governmental authority relating to the Property and all
restrictive covenants applicable to the Property, and will
immediately notify Lender of any notice received from any
governmental authority of any non-compliance with any statute,
ordinance, regulation or other governmental requirement
relating to the Property.  Borrower will promptly comply with
any direction or certificate of occupancy of any public
officer and the requirements of all policies of insurance at
any time in force in respect of the Property which impose any
duty upon Borrower with respect to any part of the Property or
the use, occupation or control thereof or the conduct of any
business therein, whether or not the same require structural
repairs or alterations.  Borrower will promptly repair,
restore, replace or rebuild any part of the Property which may
be damaged or destroyed by any casualty or as the result of
any Taking.

9. **Environmental Conditions.**  As used herein, "Environmental
Condition" means any condition with respect to soil, surface
waters, ground waters, stream sediments, building materials
and other environmental conditions on and off the Property
which could require remedial action with respect to the
Property and/or may result in claims brought by, or
liabilities to, third parties, including, without limitation,
governmental entities.  Borrower will maintain and keep the
Property free of any Environmental Condition.  Borrower will
indemnify and hold Lender harmless from and against any and
all claims, lawsuits, damages, losses, liabilities and
expenses, including, without limitation, legal, accounting,
consulting, engineering and other expenses, which may be
imposed upon or incurred by Lender arising out of or in
connection with any Environmental Condition now existing or
found to have been created or present prior to the date on
which the indebtedness secured by this Mortgage is paid in
full, including, without limitation, the exposure of any
person to any Environmental Condition, damages to natural
resources, or the actual or alleged violation of any federal,

state, local, federal statutes or regulation, regardless of whether such Environmental Condition or exposure resulted from activities by Borrower or Borrower's predecessors in interest. With respect to any Environmental Conditions existing prior to or as of the date of any sale of the Property by foreclosure pursuant to this Mortgage or by deed in lieu of foreclosure, the indemnification obligations of Borrower under this paragraph will survive such sale.

10. **Alterations.** Without Lender's prior written consent, Borrower will not remove, demolish or materially alter any of the Improvements, erect any buildings or additions to existing Improvements on the Land, grant any easements affecting the Property, apply for any change in the zoning of the Property, change the use of the Property from its present use or such other use as has been approved by Lender, create or modify any existing covenants, conditions or restrictions affecting Property or subdivide the Property.

11. **Performance by Lender.** Should Borrower fail to make any payment, including without limitation Impositions or insurance premiums, or take any other action as and when required hereunder, then Lender may, at its option, make any such payments and take any such actions and, in doing so, incur such costs and expenses as Lender, in its discretion, may deem to be appropriate, whereupon Borrower will immediately upon demand reimburse Lender for the amount of all such payments made and costs and expenses incurred, together with interest thereon at the rate of interest then provided for in the Note, and such amount will be secured by this Mortgage, will be a lien upon the Property prior to any right, title, interest or claim in, to or upon the Property attaching or accruing subsequent to the lien of this Mortgage, and may be collected in the same manner as the indebtedness hereby secured. No payment or action by Lender pursuant to this paragraph will constitute a waiver by Lender of, or be deemed to have cured, any Default (as hereinafter defined).

12. **Transfer.** Without the prior written consent of Lender, Borrower will not (a) create, permit or suffer any charge, lien or encumbrance upon the Property, or any part thereof or interest therein, excepting the lien of this Mortgage and those encumbrances permitted pursuant to paragraph 2, (b) sell, convey, lease or transfer the Property, or any part thereof or interest therein, legal or equitable, or ⑥ permit or suffer the sale or transfer of any beneficial interest in Borrower.

13. **Rents and Leases.** Borrower assigns to Lender, as additional security for the payment, performance and observance of the indebtedness and obligations hereby secured, all of the rents, issues and profits of the Property; provided that Borrower will be entitled to receive the rents, issues and profits of the Property at all times that there does not exist any Default. In addition, Borrower will, as and when requested by Lender, assign to Lender by specific assignment any leases now or hereafter on the Property in which Borrower is lessor; provided that Borrower will be entitled to receive the rents thereunder at all times that there does not exist a Default. Any rents, issues and profits of the Property collected by Lender will be applied first to the payment of costs of operation and management of the Property and collection of rents, including without limitation receiver's bonds and fees and reasonable attorneys' fees, and then to the indebtedness secured by this Mortgage. Upon the request of Lender, Borrower will obtain subordination, non-disturbance and attornment agreements, executed by Borrower and any of its lessees designated by Lender, in form and substance satisfactory to Lender, which agreements will provide for subordination of such leases to the lien and operation of this Mortgage, the attornment of such lessees to Lender and any purchaser of the Property and the continual performance by such lessees of all of their obligations pursuant to their leases and will further provide for the non-disturbance by Lender of such lessees so long as they are not in default under their respective leases. Borrower will perform and observe all obligations contained in any lease now or

hereafter affecting the Property, or any part thereof, to be
performed or observed by Borrower. If Borrower receives a
notice from any lessee claiming a default by Borrower under
any lease, Borrower will forthwith furnish a copy of such
notice to Lender. Borrower will not terminate or materially
amend or modify any existing or future lease of all or any
part of the Property, enter into any new lease of all or any
part of the Property, or accept any prepayment of installments
of rent for more than one month in advance, without the prior
written consent of Lender.

14. **Right of Possession Upon Default.** If any Default occurs,
then, for so long thereafter as a Default exists, Lender may,
at its option, take possession of the Property, rent the same,
collect all rents, issues and profits thereof and apply the
same in accordance with the provisions of paragraph 13. Upon
the commencement of any action to foreclose this Mortgage, or
at any time any such action is pending, the court will on
application of Lender, and regardless of the adequacy of the
security for the obligations then secured by this Mortgage,
appoint a receiver to take immediate possession of, manage and
control the Property, notwithstanding that the same may be
occupied by Borrower, and to collect and receive the rents,
issues and profits thereof, and apply the same under the
direction of the court.

15. **Security Agreement.** To the extent that any part of the
Property is not real property, this Mortgage constitutes a
security agreement between Borrower and Lender under the
Uniform Commercial Code with respect thereto, and a security
interest therein, and in and to all replacements, replacement
parts, additions, repairs, repair parts, accessions and
accessories incorporated therein or affixed thereto and the
substitutions therefore and proceeds (including insurance
proceeds payable by reason of loss or damage thereto) thereof,
is hereby granted by Borrower to Lender. With respect to such
part or parts of the Property, this instrument creates a
security interest in favor of Lender under the Uniform
Commercial Code, and Lender will have all rights and remedies
of a secured party under the Uniform Commercial Code, without
limitation upon or in derogation of the rights and remedies
created under and accorded Lender by this Mortgage or under
any other laws, it being understood that the rights and
remedies of Lender under the Uniform Commercial Code will be
cumulative and in addition to all other rights and remedies of
Lender arising under any other laws. From time to time when-
ever demand may be made therefore by Lender, Borrower, within
ten (10) days after such demand, will execute and deliver to
Lender, in form and substance satisfactory to Lender, financ-
ing statements covering such property and will pay the costs
of preparing and the fees for the filing and refiling of such
financing statements.

16. **Lender's Expenses.** If Lender incurs or expends any sums,
including reasonable attorneys' fees, whether in connection
with any action or proceeding or not, to sustain the lien of
this Mortgage or its priority, or to enforce or collect any
obligations hereby secured, all such sums will be immediately
due and payable by Borrower to Lender with interest thereon at
the interest rate then provided for in the Note. All such
sums will be secured by this Mortgage and be a lien on the
Property prior to any right, title, interest or claim in, to
or upon the Property attaching or accruing subsequent to the
lien of this Mortgage, and may be collected in the same manner
as the indebtedness hereby secured.

17. **Default.** Any one or more of the following will con-
stitute a "Default" hereunder: (a) the occurrence of any
"default" as set forth in the Note; (b) default by Borrower in
the payment of any amount payable under the Note or this
Mortgage, whether payable to Lender or to any third party, on
the date such payment is due; (c) default by Borrower in the
performance of any term, covenant, condition, obligation or
agreement of Borrower on the date such performance is due
under this Mortgage; (d) the imposition of any charge, lien or
encumbrance upon the Property, the sale, conveyance, lease or
transfer of the Property, or any part thereof or interest
therein, or the sale or transfer of any beneficial interest in

Borrower) is assisted to by Lender; (e) the tender or making by Borrower of any material representation or statement, certificate, schedule or report made in, or furnished in connection with, any of the Loan Documents or the Loan which prove to be false or misleading in any material respect as of the time made or furnished; (f) loss of, theft of or damage to the Improvements, unless the same is promptly replaced, repaired or rebuilt; (g) the failure of Borrower to promptly satisfy or cause to be set aside any execution, garnishment or attachment against Borrower; (h) the entry of an order for relief with Borrower as debtor under any bankruptcy laws of the United States; (i) the making by Borrower of an assignment for the benefit of creditors or the entry by Borrower of a composition agreement with Borrower's creditors; or (j) the appointment of a trustee, receiver or liquidator for Borrower.

18.  **Remedies.**  At any time as of which a Default has occurred and is continuing uncured, Lender, at its option, may, but will not be obligated to, exercise any one or more of the following remedies without notice or demand, which notice and demand Borrower hereby expressly waives: (a) declare any or all of the indebtedness secured by this Mortgage to be due and payable immediately; (b) apply for the appointment of a receiver to collect the rents, issues and profits of the Property and to preserve the security hereof, as a matter of right, without consideration of the value of the Property as security for the amount due Lender, or the solvency of any person or persons liable for the payment of such amounts, the rents, issues and profits of the Property being assigned to Lender as additional security for the payment of such indebtedness; (c) enter upon the Property, in person or by agent or by court-appointed receiver, and take any and all steps which may be desirable in Lender's judgment to manage and operate the Property, and apply any rents, issues or profits collected against the indebtedness secured by this Mortgage without in any way curing or waiving any default of Borrower; (d) foreclose the lien of this Mortgage by judicial proceeding with respect to the Property or any parcel or parcels thereof, whereupon Lender will have the option of having the Property sold as a whole or in parcels; and (e) exercise any other right or remedy available under any of the Loan Documents or otherwise available at law or in equity. All remedies available to Lender with respect to this Mortgage and the indebtedness and obligations hereby secured, whether provided for under this Mortgage or under any other of the Loan Documents or available at law or in equity, will be cumulative and may be pursued concurrently or successively in such order as Lender may determine in its sole discretion.

19.  **Inspection.**  Lender and its agents and employees will have access to and the right to inspect the Property at all reasonable times, and will have the right to go upon the Property to maintain, repair, rebuild, replace and protect the Improvements.

20.  **Non-Waiver.**  If Lender (a) grants any extension of time or forbearance with respect to the payment of any indebtedness or the performance or observance of any obligations secured by this Mortgage, (b) takes other or additional security for the payment, performance and observance of the indebtedness and obligations secured by this Mortgage, (c) waives or fails to exercise any right or remedy granted herein or under the Note, (d) grants any release, with or without consideration, of the whole or any part of the security held for the payment, performance and observance of the indebtedness and obligations secured by this Mortgage, or (e) amends or modifies in any respect with the consent of Borrower any of the terms and provisions hereof or of the Note, then such act or omission to act will not release Borrower from any obligations under this Mortgage or the Note, nor preclude Lender from exercising any right, remedy, power or privilege herein granted or intended to be granted in the event of any other default then made or any subsequent default, nor in any way impair or affect the lien or priority of this Mortgage.

21. **Validity of Provisions.** The parties intend that this Mortgage and all of the other Loan Documents be in compliance with all applicable laws and be enforceable in accordance with their terms. If any provision of any such document is illegal or unenforceable, such provision will be deemed canceled to the same extent as though it never had appeared therein, but the remaining provisions will not be affected thereby. If the interest charged on the Loan is deemed to be usurious, then the interest rate will be deemed modified to the highest rate permitted under applicable law and all payments theretofore made on the Loan will be credited as though such rate had been the rate charged.

22. **Indemnification.** Borrower will indemnify and hold Lender harmless from and against any loss suffered or liability, including without limitation reasonable attorneys' fees, incurred by Lender on account of any damage to the person or property of the parties hereto or of third parties by reason of or in connection with the operation or management of the Improvements, whether or not such damage is partly due to the negligence of Lender or its employees or agents, unless such damage was caused solely by the act or acts of Lender or its employees or agents while on the Property. Borrower will undertake, at its sole expense and through counsel reasonably satisfactory to Lender, the defense of Lender in any lawsuit commenced as the result, or alleged to be the result, of injury or damage occurring by reason of or in connection with the operation or management of the Improvements. The indemnification provided for in this paragraph is in addition to, and not in limitation of, the indemnification provided for in paragraph 9.

23. **References.** All references in this Mortgage to any of the Loan Documents or any other documents or instruments will be deemed to be references to the Loan Documents or other documents or instruments as the same may from time to time be modified, amended, renewed, consolidated or extended.

24. **Notices.** Each notice or other communication to be given in accordance with this Mortgage will be addressed to the party to be notified at the address first set forth above or at such other address as each party may designate for itself from time to time by notice hereunder, and will be deemed to have been validly given or made (i) three (3) days following deposit in the U.S. Mail, certified or registered with return receipt requested, with proper postage prepaid, or (ii) the next business day after such notice is delivered to a regularly scheduled overnight delivery carrier with delivery fees either prepaid or an arrangement, satisfactory with such carrier, made for the payment of such fees, or (iii) upon receipt of notice given by telecopy or personal delivery.

25. **Fixture Filing.** This Mortgage constitutes a financing statement filed as a fixture filing under the Uniform Commercial Code. For such purpose, Borrower is deemed to be the debtor and Lender is deemed to be the secured party.

26. **Binding Effect.** This Mortgage will be binding upon Borrower and Borrower's heirs, legal representatives, successors and assigns, and will inure to the benefit of Lender and its successors and assigns; provided that this paragraph will not be deemed to be a consent or approval by Lender of any transfer or assignment of the Property by Borrower.

27. **Governing Law.** This Mortgage will be governed by and construed in accordance with the laws of the State of Ohio.

28. **Estoppel.** Borrower, within ten (10) days after request from Lender, will furnish a written statement, duly acknowledged, of the amount due on the indebtedness secured by this Mortgage, and whether any offsets or defenses exist against such indebtedness, and if such offsets or defenses are alleged to exist, the nature and extent thereof.

29. **More Than One Borrower.** If Borrower is more than one person or entity, then the obligations of each such person or entity under this Mortgage will be joint and several, and all references herein to Borrower will be deemed to be references to each such person or entity individually as well as collectively.

BOOK 4314  PAGE 356

This Mortgage is granted upon the condition that if Borrower should well and truly pay to Lender the indebtedness secured hereby, and should fully keep and perform all the conditions and agreements to be kept, done and performed by Borrower, then this Mortgage will be void; otherwise it will remain in full force and virtue in law and equity forever.

IN WITNESS WHEREOF, Borrower has executed this Mortgage as of the date first set forth above.

_____
MITCHELL W. ALLEN

_____
YASMEEN ALLEN


(ACKNOWLEDGMENT FOR INDIVIDUALS)
I.STATE OF OHIO
COUNTY CLINTON OF SS:


The foregoing instrument was acknowledged before me this 5TH day of OCTOBER, 2006 by MITCHELL W. ALLEN AND YASMEEN ALLEN, HUSBAND AND WIFE.


SHARMA L EWING
Notary Public, State of Ohio
My Commission Expires Apr. 11, 2011
Recorded in Clinton County

A.Notary Public

_____


This instrument was prepared by The National Bank & Trust Company.

EXHIBIT "A"

### Property Description

Property Address:     52 E. Mulberry St., Lebanon, Ohio
Parcel Number:   12-06-485-018

Situated in Sec. 6, T4E, R3N, County of warren, in the State of Ohio and in the City of Lebanon:
Being part of Inlot No. 41, in the City of Lebanon, warren County, Ohio, beginning at the southeast
corner of said lot and running thence north with Mechanic Street sixty five (65) feet, thence west
twenty one (21) feet six (6) inches, thence south sixty five (65) feet to Mulberry Street, thence east
with said Street twenty one (21) feet six (6) inches to the place of beginning. Being only that part of
Lot No. 41 upon which the three-story brick building now stands.

Subject, however, to all building, use, planning and zoning restrictions and limitations, and all
easements, rights-of-way and protective covenants heretofore created, which are now applicable to
and effective against said real estate.

```
BETH DECKARD - WARREN COUNTY RECORDER
Doc #:    619829  Type: MTG
Filed:10/13/2006  11:22:13  $       84.00
OR Volume:    4314 Page:    350 Return: M
Rec#:   20337            Pages:    9
ROSE & DOBYNS CO LPA
```

BOOK 4314   PAGE 350